JUDGE TORRES

14CV0136

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RACHELE TROTTER,                              )    **COMPLAINT**
                                              )
                          Plaintiff,          )    **JURY TRIAL DEMANDED**
                                              )
        -against-                             )
                                              )
THE CITY OF NEW YORK; POLICE OFFICER          )
JAMES QUIRK, Individually and in His Official )
Capacity, and POLICE OFFICERS "JOHN/JANE      )
DOE", Nos. 1-10, Individually and in Their    )
Official Capacities (the names John and Jane Doe )
being fictitious, as the true names are presently )
unknown),                                     )
                                              )
                          Defendants.         )
------------------------------------------------------------X

RECEIVED
JAN - 9 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF ACTION

1.      This is an action in which RACHELE TROTTER ("Plaintiff") seeks money damages, both compensatory and punitive, an award of attorney's fees and costs related to the action, and any other such relief as this Court deems equitable and just, for violation of her civil rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also asserts supplemental claims under New York State law, pursuant to the Constitution of the State of New York.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. This being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights,

jurisdiction is thereby conferred upon this Court by 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

3. The Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all New York State law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

4. Venue is proper in this district, pursuant to 28 U.S.C. §§ 1391 (b) and (c) in that Defendant THE CITY OF NEW YORK is administratively located within the Southern District of New York, and the unlawful practices complained of herein occurred within the Southern District of New York.

### JURY DEMAND

5. Plaintiff demands a trial by jury in this action on each and every one of Plaintiff's claims as pleaded herein.

### PARTIES

6. Plaintiff RACHELE TROTTER ("Plaintiff") is a resident of Kings County in the City and State of New York.

7. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area

of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department (hereinafter "NYPD").

9. Defendant POLICE OFFICER JAMES QUIRK, Shield 20048, at all times relevant herein, is and was an officer, employee and agent of THE CITY OF THE NEW YORK and/or the NYPD, a municipal agency of the Defendant THE CITY OF NEW YORK. Defendant POLICE OFFICER JAMES QUIRK is sued in his individual and official capacities.

10. At all times relevant, Defendants POLICE OFFICERS "JOHN/JANE DOE", Nos. 1-10, whose identities are presently unknown, are and were at all times relevant herein officers, employees and agents of THE CITY OF NEW YORK and/or the NYPD, a municipal agency of the Defendant THE CITY OF NEW YORK. Plaintiff does not know the true names and shield numbers of Defendants POLICE OFFICERS "JOHN/JANE DOE", Nos. 1-10. Defendant POLICE OFFICERS "JOHN/JANE DOE" are sued in their individual and official capacities.

11. Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants and employees of Defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

12. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK and/or the NYPD, which is responsible for the training, retention, supervision, promotion, discipline and control of police officers and supervisory police officers, including the individually named Defendants herein.

## NOTICE OF CLAIM

13. Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against Defendant THE CITY OF NEW YORK, on April 10, 2013.

14. The City assigned a claim number to Plaintiff's claim, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on December 19, 2013.

15. To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant THE CITY OF NEW YORK in response to this claim. At least thirty (30) days have elapsed since the service of the Notice of Claim.

16. This action was commenced within one year and ninety days of the date of the occurrence of the events described herein.

## STATEMENT OF FACTS

17. Plaintiff, at the time of the incident described herein, was twenty-eight years old, stood 5' 2" and weighed approximately 115 lbs. Prior to the incident described herein, Plaintiff had never been arrested.

18. On January 14, 2013, at approximately 11:55 P.M., Plaintiff was lawfully inside the Comedy Cellar, located at 117 MacDougal Street, New York, New York, which is a commercial business.

19. Plaintiff was speaking to a waitress when Calvin Carmichael, a security guard working for the Comedy Cellar, who, upon information and belief, stands approximately 6 feet tall and weighs approximately 200 lbs., asked Plaintiff to leave the premises. Though Plaintiff was merely attempting to order more drinks, Mr. Carmichael said she was being "too noisy" and that she had to leave the establishment.

20. Plaintiff had been in the establishment for approximately one to one and one half hours prior to being asked to leave.

21. Upon exiting the premises, at the bottom of a set of stairs, located below street level, Plaintiff and Mr. Carmichael had a verbal confrontation. At this point, at least two other employees from the establishment also began arguing with Plaintiff. As the verbal confrontation escalated, a slight physical altercation ensued, during which Plaintiff extended her two hands into the chest of Mr. Carmichael. During this time, an additional employee grabbed Plaintiff's purse. Plaintiff attempted to retrieve her purse.

22. During her attempted retrieval, Plaintiff and the employees moved up onto the stairwell and continued to argue about what had transpired inside the establishment. During this altercation, another employee then pushed Plaintiff halfway down a stairwell that led to the Comedy Cellar. After collecting herself and eventually her purse, Plaintiff walked up the stairs onto MacDougal Street.

23. On the street, another employee removed Plaintiff's passport from her inside jacket pocket. The employees played "keep away" with it. Plaintiff was unable to

retrieve her passport. Eventually, she decided to walk away from the establishment and head for home. At this point, the police had yet to arrive.

24. Upon information and belief, later, the employees provided Plaintiff's passport to the responding officers subsequent to their arrival on the scene. Upon information and belief, said officers lost Plaintiff's passport as it was never vouchered nor returned to Plaintiff.

25. As Plaintiff was walking away from the establishment but still on the scene, POLICE OFFICER JAMES QUIRK and POLICE OFFICER JOHN DOE 1 arrived on the scene.

26. At this point, Mr. Carmichael, had reentered the premises of the Comedy Cellar.

27. While Plaintiff was walking away from the establishment, said police officers indicated that they wanted to talk to Plaintiff.

28. Plaintiff said that the situation was over and that she would like to go home.

29. Immediately thereafter, while her back was to the two responding officers, without warning or justification, said officers violently tackled Plaintiff from behind. Plaintiff felt an intense, heavy weight hit her from behind.

30. The vicious blow caused Plaintiff to be knocked to the ground face first with her arms behind her back. This unreasonably forceful attack resulted in the left side of Plaintiff's face hitting the pavement so violently that her glasses were broken. Moreover, Plaintiff sustained a substantial cut on her left eyelid from which she was

bleeding profusely. The force resulted in bruising, swelling, redness, substantial pain and, ultimately, permanent scarring.

31. Additionally, as a result of this take down, Plaintiff suffered emotional injuries.

32. While Plaintiff was face down on the ground, and with unnecessary force being applied to Plaintiff's back, Plaintiff was violently handcuffed. The handcuffs were applied with an excessive and punitive tightness, resulting in swelling, redness, bruising and substantial pain to Plaintiff's hands and wrists. Such pain and injury lasted for approximately one week after the incident.

33. Said officers forcefully lifted Plaintiff up off the ground by her arms, while still handcuffed, causing her shoulders to be pulled back and resulting in substantial pain.

34. At no time immediately prior to said officers' actions did Plaintiff pose a threat to the safety of the officers or the public.

35. Plaintiff was then placed into the back of a police car.

36. Plaintiff was then transferred to the 6th Precinct.

37. For the first time in her life, Plaintiff was arrested, fingerprinted and photographed.

38. Plaintiff was placed in a cell at the precinct. During this time, officers in the precinct became upset with Plaintiff for her desire to be arraigned expeditiously in lieu of first going to a hospital.

39. At some point around this time, Plaintiff asked to go to the restroom.

40. POLICE OFFICER JANE DOE 1 escorted Plaintiff to the restroom.

41. Once inside the restroom, POLICE OFFICER JANE DOE 1, without warning or justification, suddenly grabbed Plaintiff and forcefully threw her up against a wall. The force of this action knocked the wind out of the Plaintiff.

42. Plaintiff was involuntarily then taken out of the restroom, and was carried by POLICE OFFICER JANE DOE 1 and POLICE OFFICER JOHN DOE 2 to a gurney located on the sidewalk outside of the precinct.

43. Against Plaintiff's will, Plaintiff was strapped down with three belts onto the gurney and placed into an ambulance.

44. Plaintiff was then taken to Beth Israel Medical Center on First Avenue and 16th Street in New York, New York.

45. There, medical professionals placed Dermabond on the cut above Plaintiff's left eye. Plaintiff was also administered a tetanus vaccination.

46. Upon information and belief, POLICE OFFICER JAMES QUIRK and POLICE OFFICER JOHN DOE 1, escorted Plaintiff back to the 6th Precinct in their squad car.

47. Sometime thereafter, Plaintiff was transferred to Manhattan Central Booking.

48. Plaintiff was charged with two counts of Assault in the Third Degree, one count of Resisting Arrest, one count of Attempted Assault in the Third Degree, and one count of Harassment in the Second Degree.

49. On January 15, 2013, Plaintiff was arraigned on the above charges.

50. Plaintiff was released on her own recognizance.

51. On November 19, 2013, all charges were dismissed and the case was sealed.

52. As a result of the events alleged herein and due to the actions taken by the individual Defendants, Plaintiff suffered damages. Plaintiff was deprived of her liberty, suffered emotional distress, mental anguish, physical injury, fear, pain, anxiety, embarrassment, humiliation, shock, damage to reputation and a permanent physical injury to her face as a result of this violent attack.

### FIRST CAUSE OF ACTION

#### Excessive Force / Unreasonable Force

53. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

54. The conduct and actions of Defendants, acting in concert and under color of law, in authorizing, directing and/or causing force to be used on Plaintiff was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical injury and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of her person and the right to be free from the use of excessive, unreasonable, and unjustified force.

55. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION

### Failure to Intervene

56. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

57. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

58. Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments to the Constitution of the United States.

## THIRD CAUSE OF ACTION

### Liability of Defendant City of New York
### For Constitutional Violations

59. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

60. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, policy, usage, practice, procedure or rule of THE CITY OF NEW YORK, through the NYPD, that was forbidden by the Constitution of the United States and that was a direct and proximate cause of the unconstitutional conduct alleged herein.

61. The aforementioned customs, policies, usages, practices, procedures or rules of THE CITY OF NEW YORK, through the NYPD, included inadequate screening,

hiring, retaining, training and supervising its employees, and such policies were the direct and proximate cause of the unconstitutional conduct alleged herein. As a result of the failure of THE CITY OF NEW YORK, through the NYPD, to properly recruit, screen, hire, train, discipline, and supervise its officers, including the individual Defendants named herein, Defendant THE CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

62. Defendant THE CITY OF NEW YORK, through the NYPD, owed a duty of care to Plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Plaintiff or to those in a like situation would probably result from the foregoing conduct.

63. Upon information and belief, all of the individual Defendants were unfit and incompetent or their positions.

64. Upon information and belief, Defendant THE CITY OF NEW YORK knew or should have known through the exercise of reasonable diligence that the individual Defendants were potentially dangerous.

65. Upon information and belief, Defendant THE CITY OF NEW YORK'S negligence in screening, recruiting, hiring, training, disciplining and supervising these Defendants proximately caused each of Plaintiff's injuries.

66. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION

### State Law Assault and Battery

67. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

68. By their conduct, as described herein, Defendants did inflict assault and battery upon Plaintiff. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

69. Defendant THE CITY OF NEW YORK, as an employer of the individual Defendant officers, is responsible for their wrongdoing under the doctrine of respondeat superior.

70. As a result of the foregoing, Plaintiff sustained the damages alleged herein. Such damages were the direct and proximate cause of the misconduct and abuse of authority stated above.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

71. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

72. By reason of the foregoing, Defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which constituted the intentional infliction of emotional distress.

73. The intentional infliction of emotional distress by these Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

74. Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon Plaintiff. Defendant THE CITY OF NEW YORK, as employer of each of the Defendants, is responsible for their wrongdoings under the doctrine of respondeat superior.

75. As a direct and proximate result of the misconduct and abuse of the authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress

76. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

77. By reason of the foregoing, Defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon Plaintiff.

78. The negligent infliction of emotion distress by these Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

79. Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon Plaintiff. Defendant THE CITY OF NEW YORK, as employer of each of the Defendants, is responsible for their wrongdoings under the doctrine of respondeat superior.

80. As a direct and proximate result of the misconduct and abuse of the authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

(A) Compensatory damages in an amount to be determined at trial;

(B) Punitive damages in an amount to be determined at trial;

(C) Reasonable attorney's fees, costs and interest related to this action, pursuant to 28 U.S.C. § 1988; and

(D) Such other relief as this Court deems appropriate and equitable.

DATED: New York, New York
January 9, 2014

Respectfully submitted,

Gregory G. Gomez, Esq.
Gomez & Vournas LLC
305 Broadway, Suite 1400
New York, New York 10007
T: 212-323-7476
F: 212-323-7477
E: gg@gomezvournas.com

*Attorney for Plaintiff*